ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 NOV -8 AM 8:20
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ERNIE A. TOWLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV306-080 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security,[1] | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Ernie A. Towle ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by counsel, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based upon claims of disability dating back to March 1, 2002, Plaintiff applied for DIB in October of 2003. Tr. ("R."), pp. 55-57. The Social Security Administration denied

---

[1]The Court takes judicial notice that on February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of the United States Social Security Administration. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Michael J. Astrue as Defendant in this case.

his application, R. 39-42, and his request for reconsideration. R. 34-37. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). R. 33. Represented by counsel, Plaintiff appeared and testified at a hearing on March 14, 2006.[2] R. 418-63. The ALJ then issued an unfavorable decision dated April 25, 2006. R. 12-24.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in sustained substantial gainful activity from his alleged onset date - March 1, 2002 - through at least the date of the decision (20 CFR §§ 404.1520(b) and 404.1571 *et seq.*).

2. The claimant has alcohol/marijuana abuse, post-traumatic-stress disorder (PTSD), and mild low back arthritis - impairments that are considered severe (20 CFR § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526).

4. The claimant has the residual functional capacity for medium exertional work activities that do not require exposure to crowds of more than five to ten people at a time. Although he can be in the presence of coworkers throughout an eight-hour workday, his social interaction with them should be limited to no more than 2 ½ hours during that workday. [Thus,] [t]he claimant is able to perform his past relevant work as a maintenance repair building worker and a finish carpenter and other jobs that are available in significant numbers in the national economy.

R. 16, 19, 22. Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, see 20 C.F.R. § 404.1520(a)(4)(iv), and the ALJ concluded that Plaintiff had not been "under a 'disability,' as defined in the Social Security Act, from March 1, 2002, through the date of this decision." R. 22.

---

[2]Vocational Expert Conroy also testified at the hearing. R. 451-61.

2

When the Appeals Council ("AC") denied Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner. R. 3-5. Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that the ALJ improperly rejected the opinion of a physician's assistant regarding the severity of Plaintiff's PTSD and improperly evaluated Plaintiff's credibility.

## II. THE STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. Weight Accorded to Opinion of Physician's Assistant

Plaintiff first argues that the ALJ erred in his treatment of the opinion of Joseph Claroni, a physician's assistant ("PA"), regarding the severity of Plaintiff's PTSD. Not only does Plaintiff complain that the ALJ was incorrect in stating that PA Claroni's opinion was not well supported and was inconsistent with the PA's own documented clinical findings and the findings of non-treating examining sources, but he also takes issue with the ALJ failing to note a two-page Physical Capacities Evaluation completed by PA Claroni in February of

4

2006. Pl.'s Br., p. 11 (citing R. 23). The Commissioner counters that the ALJ properly evaluated all of the medical evidence of record, including the evidence from PA Claroni. Comm'r Br., p. 8. Moreover, the Commissioner points out that as a PA, Mr. Claroni is not recognized under the social security regulations as an "acceptable medical source" for providing information concerning the existence of alleged impairments. Id. at 8-9 (citing 20 C.F.R. § 404.1513). As the resolution of this case rests heavily on the weight due to PA Claroni's opinion, the Court will first turn its attention this issue.

According to the social security regulations, the only sources "who can provide evidence to establish an impairment" are licensed physicians (medical or osteopathic doctors), licensed or certified psychologist, licensed optometrists, licensed podiatrists, and qualified speech pathologists. 20 C.F.R. § 404.1513(a). However, the ALJ should use a PA's medical observations when evaluating the severity of a claimant's impairments and how they affect his ability to work. Id. § 404.1513(d) (allowing consideration of evidence from "other sources," which includes PAs, to evaluate severity of impairment and impact on ability to work). Thus, "a PA's opinion does not carry the same weight as the medical opinion of a licensed physician," and therefore, "[t]he medical opinions of a PA are not entitled to controlling weight under the statutes." Shubargo v. Barnhart, 161 Fed. Appx. 748, 751, 752 (10th Cir. Dec. 13, 2005); see also Smith v. Shalala, 856 F. Supp. 118, 122 (E.D.N.Y. 1994) (recognizing that PAs are not "acceptable medical sources" as defined in the social security regulations, and therefore an opinion of a PA should be accorded less weight than an opinion from a licensed physician, even if the opinion of the licensed physician was formed as part of a consultative examination); McCaffery v. Comm'r of Soc.

Sec. Admin., 152 Fed. Appx. 574, 575 (9th Cir. Oct. 7, 2005) (noting that because PA was not a doctor, "his observations were entitled only to the deference owed other lay witnesses" but also recognizing that ALJ must give reasons for disregarding such testimony); Marrotte v. Barnhart, 107 Fed. Appx. 14, 16 (8th Cir. Aug. 13, 2004) (acknowledging that PAs are not acceptable medical sources but may provide evidence concerning severity of impairments and impact on ability to work).[3]

Accordingly, although the ALJ was required to address PA Claroni's opinion, the opinion is not entitled to the deference owed to the opinion of a physician, let alone a treating physician, concerning the existence of an impairment. Cf. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (acknowledging long-standing rule that "[t]he opinion of a treating physician . . . must be given substantial or considerable weight unless good cause is shown to the contrary." (internal quotation marks and citation omitted)). Likewise, PA Claroni's opinion is not entitled to deference over the opinions of state agency consultants - licensed doctors - concerning the existence of impairments. Indeed, according to Social Security Ruling 96-6p, findings of fact made by State agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. Lastly, the final responsibility for determining whether a claimant is disabled under the Social Security Act is reserved to the Commissioner; treating source opinions, whether from a PA or from a licensed physician, on issues reserved to the

---

[3]The parties did not cite, and the Court did not find, any Eleventh Circuit case law directly on point concerning the weight to be afforded the opinion of a PA.

Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(e).

Here, there is no question that the ALJ throughly and repeatedly addressed PA Claroni's opinion. First, the Court can quickly dispense with Plaintiff's claim of alleged error concerning the failure to address PA Claroni's opinion that Plaintiff was "unemployable" in February of 2006. Pl.'s Supp. Br., pp. 3-4. According to the transcript, this 2006 opinion provided on a two-page form was not part of the administrative record before the ALJ, but was instead submitted as additional evidence to the AC.[4] R. 6. The ALJ cannot be faulted for failing to address a piece of evidence that was not before him for consideration.

Turning next to Plaintiff's argument that the ALJ erred in concluding that PA Claroni's 2004 opinion was "not well supported" and "inconsistent with [PA Claroni's] own documented clinical findings as well as those by non-treating examining sources (Exhibit 2F)" (Pl.'s Br., p. 8 (citing R. 23)), the Court also concludes that this argument is without merit. Plaintiff starts his argument concerning well-supported clinical findings with a citation to a VA treatment note from May of 2002, which is little more than a note memorializing Plaintiff's own description of his mental state - a description that was not even given to PA Claroni. R. 304-05. This information does not shed any light on Plaintiff's argument that the ALJ erred in stating that PA Claroni's *own* clinical findings did not support a conclusion that Plaintiff is "unemployable."

---

[4]Although the cover letter attached to the additional evidence is addressed to the ALJ, the exhibit is clearly marked "AC-1." R. 408.

Moving next to the evidence that actually relates to PA Claroni, Plaintiff goes to great lengths to chronicle PA Claroni's treatment notes that recount Plaintiff's on-going mental health issues involving PTSD and Global Assessment Functioning (GAF) scores. Pl.'s Br., pp. 8-11. This tactic does little to advance Plaintiff's position because the ALJ recognized and discussed, in detail, that Plaintiff had on-going problems; however, contrary to Plaintiff's position, the ALJ concluded that the evidence showed these issues had stabilized. R. 17-19. Plaintiff places much weight on the argument that the ALJ ignored PA Claroni's opinion in a 2006 document that Plaintiff was "unemployable" - and presumably had not stabilized - but as discussed above, the transcript does not show that the 2006 opinion was before the ALJ.[5]

Nor is the Court persuaded by Plaintiff's argument that PA Claroni's opinion that he (Plaintiff) was "unemployable" was consistent with other record evidence, in particular the opinions of consultative examiners. Pl.'s Br., p. 11-13. In his opinion, the ALJ specifically discussed the consultative examinations performed by Gerardo H. Guzman, M.D., and John C. Whitley, III, Clinical Psychologist. R. 18. In his initial brief, as evidence supporting PA

---

[5]Likewise, Plaintiff's argument that any improvement in his mental condition held an "obvious connection" to his avoidance of stressful situations appears to be based on speculation. That is, although Plaintiff claims that his abstention from the workplace relieved his stress, there is no evidence that an aborted attempt at work during the relevant period away from work triggered any regression or other adverse reaction. In other words, Plaintiff is relying on the <u>absence</u> of evidence rather than documented evidence to make his point. Moreover, Plaintiff's reliance on SSR 85-15 and its language about <u>potential</u> adverse effects on functioning when a person with a mental illness encounters the regimented demands of a workplace is unpersuasive, not only for its hypothetical language but also because it appears to have been developed in the context of using the Medical Vocational Guidelines, not as Plaintiff attempts to apply it here in consideration of the validity of a medical opinion.

8

Claroni's opinion, Plaintiff relies heavily on the comments of Dr. Guzman, a doctor performing the physical assessment, that Plaintiff was "shaking all over" from his "chronic nervous condition." Pl.'s Br., p. 11. Yet in his Supplemental Brief, Plaintiff takes the Commissioner to task for relying on the opinion of another doctor who performed a physical assessment that "does not even purport to comment on Plaintiff's mental limitations." Pl.'s Supp. Br., p. 7 (citing R. 340-47). Although Dr. Guzman made a comment that Plaintiff was shaking all over, as Plaintiff points out with respect to a physical assessment from a non-examining source (see id.), Dr. Guzman was primarily concerned with Plaintiff's physical - not mental - condition. R. 313-15. Moreover, contrary to Plaintiff's representation that Dr. Guzman "found" Plaintiff to be shaking "from his 'chronic nervous condition'" (Pl.'s Br., p. 11), the report actually states that Dr. Guzman "believe[s]" that the shaking was secondary to a chronic nervous condition; he also stated that "a psychological evaluation would be helpful." R. 315 (emphasis added). A comment resulting from a physical evaluation that a psychological evaluation would be helpful hardly amounts to a finding - let alone a documented finding - of a chronic nervous condition that causes shaking.

That recommended psychological evaluation by a licensed psychologist took place approximately a month later, in April 2004, and was performed by Dr. Whitley. R. 317-20. As the ALJ reported, Dr. Whitley described Plaintiff as "able to adhere to a work schedule despite the acknowledged consideration he gave to the claimant's allegations of difficulty in dealing with public situations and in interacting with others in a predictable manner." R. 18; R. 319. Plaintiff's "affect was normal and overall mood appeared to be pleasant" during the examination, and although Plaintiff was somewhat anxious, "no depression was noted." R.

9

319. Overall, although Dr. Whitely assessed that Plaintiff had a "significantly limited" ability to engage in employment activities, that assessment does not support PA Claroni's ultimate conclusion that Plaintiff was "unemployable." Additionally, Plaintiff's argument that a consulting physician's opinion does not constitute "substantial evidence" when contradicted by the opinion of a treating <u>physician</u>, (Pl.'s Br., p. 12; Pl.'s Supp. Br., p. 7), is unavailing because as discussed in detail above, a PA's opinion is not entitled to the same weight as that of a licensed physician, let alone the same deference as the opinion of a treating physician.

Furthermore, the fact that the consultative examinations were performed prior to the date PA Claroni opined that Plaintiff was "unemployable" does not undermine the ALJ's decision to credit the opinions of the licensed doctors over a PA. In particular, the Court notes that Plaintiff has not pointed to medical evidence of record from somewhere other than the properly discredited assessment of PA Claroni to support his conclusion that he was precluded from all work. To the extent that Plaintiff emphasizes that PA Claroni is an "other medical source" that can comment on the severity of an impairment without establishing the existence of an impairment - existence of an impairment must be established by an "acceptable medical source" - the Court agrees with this general interpretation of the regulations. Pl.'s Supp. Br., pp. 8-9 (citing 20 C.F.R. § 404.1502 and SSR 06-3p). However, careful examination of the language of SSR 06-3p shows that "other source" information "may" - not must - provide insight on the severity of an impairment and how it affects a claimant's ability to function. Pl.'s Supp. Br., Attach. 1, p. 2. Thus, although the ALJ may consider the opinion of PA Claroni about the severity of Plaintiff's PTSD and its impact on Plaintiff's ability to work, the ALJ is not required to accept the opinion.

10

SSR 06-3p also explains that although the record "should reflect the consideration of opinions" from "other sources" which are not deemed "acceptable" under the regulations, it also explains that "there is a distinction between what the ALJ must consider and what the ALJ must explain." Id. at 5. Here, the ALJ stated more than once that he had considered the entire record (R. 16, 19), and the thoroughness of the review of the record evidence in the ALJ's opinion confirms that fact. Although Plaintiff may disagree with the conclusion reached by the ALJ about the weight to be accorded PA Claroni's opinion in light of the entirety of the record evidence, the provisions of SSR 06-3p do not mandate remand or reversal.

In sum, the ALJ properly discredited PA Claroni's opinion that Plaintiff was "unemployable" because the opinion was "not well supported" and was "inconsistent with [his] own documented clinical findings, as well as those by non-treating examining sources." Thus, Plaintiff's first argument forms no basis for a recommendation from this Court for remand or reversal.

## B.     Credibility Determination

Plaintiff also argues that the ALJ relied upon improper reasons to conclude that Plaintiff was not credible. The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction

arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed pain or restriction. Id.

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*). As the Eleventh Circuit has explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the question is not whether the ALJ considered Plaintiff's subjective complaints and then clearly explained his rationale for his credibility determination. Rather, Plaintiff acknowledges the credibility analysis but argues that the ALJ misinterpreted the factors upon which he relied to question Plaintiff's credibility. Pl.'s Br., pp. 13-15. The Commissioner counters that the ALJ properly analyzed Plaintiff's subjective complaints in light of the entirety of the record evidence and rightly concluded that Plaintiff was not credible. Comm'r Br., pp. 11-12. The Commissioner has the better argument.

Although it is true that the ALJ noted a request for a back brace in relative proximity to notification of Plaintiff's administrative hearing (R. 19), despite multiple prior requests for back braces (see, e.g., R. 172, 237-39), careful examination shows that the ALJ relied on

12

numerous other factors to discredit Plaintiff. First, Plaintiff's argument that his credibility is "greatly enhanced" by the mistakenly rejected opinion of PA Claroni's is not persuasive. Pl.'s Br., p. 15. As discussed in detail above, the ALJ did not err in his treatment of PA Claroni's opinion.

Next, the ALJ noted the discrepancy in "inconsistent reports regarding [Plaintiff's] symptoms, his active pursuit of work, and his work activity after his alleged onset date [March 1, 2002]." R. 20. Although Plaintiff reported having tremors so bad that he could not fill out a job application, he also reported having had job responsibilities in October and December of 2002. R. 281, 288, 293. Moreover, when questioned at the administrative hearing, Plaintiff admitted that he had worked for a trucking company in 2003, even though that work had not been disclosed on his disability applications.[6] R. 426.

Plaintiff also argues that the ALJ improperly noted that Plaintiff's hobbies included woodworking and camping, activities that would seemingly be hampered by tremors so severe that Plaintiff allegedly could not fill out a job application. Pl.'s Br., p. 14. According to Plaintiff, "[t]here is no indication Plaintiff had engaged in either one in recent years. . . ." Id. To the contrary, Plaintiff testified at the administrative hearing on March 14, 2006, that he "still enjoy[s]" these activities. R. 448.

---

[6]Plaintiff's current argument (Pl.'s Br., p. 13) that there is no indication that he had "any inkling" that the Social Security Administration did not rate disability on a sliding scale like the Veterans Administration - and thus there is no basis for undermining Plaintiff's credibility for failing to disclose prior work - is pure speculation, unsupported by any citation to record evidence, and not persuasive. Moreover, even if the Court were to assume that the ALJ should not have attached a negative connotation to the failure to disclose prior work because of some misunderstanding of the rules of the Veterans Administration versus the Social Security Administration, the fact that he had any work undermines a claim that Plaintiff had tremors so severe that he could not fill out a job application.

13

Likewise, Plaintiff's "distinction without a difference" argument that the ALJ improperly made a distinction between Plaintiff's allegations of a problem with "nerves" and a failure to disclose a problem with depression on a disability application is unpersuasive. Pl.'s Br., p. 14. Plaintiff claims that a two-page letter reveals a lack of sophistication that should establish that he considered "nerves" and depression to amount to the same thing. Id. (citing R. 72-74). Even if the Court were inclined to engage in such speculation as to what level of "sophistication" is necessary to draw a distinction between nerves and depression, the cited exhibit hardly supports Plaintiff's current interpretation.[7] Moreover, even if the Court were to assume for the sake of argument that no particular importance should be attached to Plaintiff's failure to allege on a disability application that he had a problem with depression, the record does not support a conclusion that any such depression was severe enough to impact Plaintiff's ability to work. As the ALJ pointed out when discussing the findings and opinions of the State Agency consultants (R. 22-23), some of which found Plaintiff's claims of "episodic depression" to be credible (R. 364), Plaintiff was still not precluded from performing all work and remained capable, despite the acknowledged presence of some impairments, of performing his past relevant work.

---

[7]For example, in the narrative, Plaintiff describes an episode of training in the Marines where he was forced to enter the deep end of a swimming pool when he did not know how to swim. He describes the stress of the situation as "taking a to[ll] on his NERVES." R. 72. A description of anxiety caused by an immediate event would hardly seem to equate to a description of on-going depression. In any event, such rank speculation does nothing to advance a reasoned review of the administrative record, and as explained above, is not the province of the Court when conducting a review of the administrative record.

In sum, the ALJ sufficiently explained his reasons for discounting Plaintiff's credibility. The ALJ's credibility determination was based on the record as a whole, and he adequately articulated the basis for his determination in his written decision. The ALJ reviewed Plaintiff's medical records and properly considered Plaintiff's own testimony regarding Plaintiff's description of his activities. The ALJ also noted the apparent incongruities between Plaintiff's subjective testimony and the record evidence. Taken in total, it is apparent that the ALJ rejected Plaintiff's subjective complaints after thoroughly evaluating the evidence in the record. Clearly articulated credibility findings such as these, which are supported by substantial evidence, will not be disturbed by a reviewing court. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*). That the Court might be able to apply a different interpretation to the record evidence than that applied by the ALJ is not sufficient to undermine the ALJ's conclusion on Plaintiff's credibility. Substantial evidence supports the ALJ's conclusion, and therefore, Plaintiff's argument on this point fails.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 8th day of November, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15